UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HEIKO GOLDENSTEIN,<br><br>    Plaintiff,<br><br>v.,<br><br>REPOSSESSORS INC., CHAD LATVAAHO, SHADY OAK ENTERPRICES, INC., .d/b/a PREMIER FINANCE ADJUSTERS, PHILIP J. HOURICAN & WILLIAM McKIBBIN,<br><br>    Defendants. | No.<br><br><br><br><br><br>Plaintiff Demands<br>Trial by Jury |

## Complaint

Heiko Goldenstein files this complaint against Repossessors, Inc., Chad Latvaaho, Shady Oak Enterprises, Inc., Philip J. Hourican, and William McKibbin under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, the Pennsylvania Fair Credit Extension Uniformity Act, 73 P.S. § 2270.4, and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), arising from the illegal repossession of the plaintiff's car to collect a usurious loan.  The plaintiff makes the follow averments in support of this complaint:

    1.    Heiko Goldenstein is a citizen of the Commonwealth of Pennsylvania residing at 7545 Spring Creek Road, Macungie, PA 18062.

    2.    During all of the events discussed in this complaint, Mr. Goldenstein was a citizen and resident of Pennsylvania.

1

3. Repossessors, Inc., is a corporation with a principal business address at 10939 89th Ave. N., Minneapolis, MN 55369.  Exhibit P-1.

4. Chad Latvaaho is believed to be the owner and chief executive of Repossessors, and he is believed to be a citizen of Minnesota.

5. Sandy Oak Enterprises, Inc., d/b/a Premier Finance Adjusters ("Premier") is a corporation with a business office at 5875 Washington Ave., Export, PA 15632.  Exhibit P-2.

6. Philip J. Hourican is believed to be the owner and chief executive of Premier, and he is believed to be a citizen of Pennsylvania.

7. Repossessors and Premier are in the automobile repossession business, Exhibits P-1 and P-2, and qualify as a debt collectors under the FDCPA, 15 U.S.C. § 1692a(6).  The principal business is these entities is the collection of debts through the enforcement of security interests, and they use various instrumentalities of interstate commerce in the course of their businesses including motor vehicles (tow trucks), the internet, telephones, and the mail.

8. Repossessors is located in Minnesota but is able to arrange for the repossession of automobiles across the nation through affiliations with other repossession companies.  Exhibit P-1.

9. In Pennsylvania, Repossessors is affiliated with Premier.  Premier performs repossessions for Repossessors in Pennsylvania.

10. William McKibbin is believed to be employed by or associated with several companies that had a role in making a usurious loan to Mr. Goldenstein, including

Sovereign Lending Solutions, LLC, RS Financial Management, LLC, RS Financial Services, LLC., and RS Financial Lending Services, LLC.

11. All of the companies in the preceding paragraph do business out of an office at 500 NE Spanish River Boulevard, Suite 15, Boca Rotan, FL 33431, under the direction of Mr. McKibbin.

12. Mr. McKibbin is believed to be a managing or controlling officer or agent of Sovereign. All of the lending practices described in this complaint are believed to be authorized or ratified by Mr. McKibbin.

13. Federal jurisdiction over this complaint arises under 18 U.S.C. § 1964 (RICO), and 15 U.S.C. § 1692k(d) ("FDCPA"). Venue is appropriate in the Eastern District of Pennsylvania where the parties reside and all of the acts alleged in the complaint occurred.

14. In the spring of 2012, Mr. Goldenstein was the owner of a 1998 Lincoln Town car.

15. The vehicle was titled, registered, and licensed in Pennsylvania.

16. Mr. Goldenstein kept the vehicle at his personal residence in Macungie, Pennsylvania.

17. In May, 2012, Mr. Goldenstein was in need of a personal loan, and borrowed $1,000 from a company called Sovereign Lending Solutions, Inc., t/a Title Loan America ("Sovereign"). Exhibit P-3

18. Sovereign is a known predatory lender that runs an on-line auto title loan operation. Auto title loans are small personal loans at enormous interest rates, often

around 300% A.P.R., secured by borrowers' cars. The loans are used to exploit people with poor credit and a crushing need for cash. Exhibit P-4.

19. Mr. Goldenstein applied for the loan through an on-line application.

20. Sovereign neither disclosed the material loan terms to Mr. Goldenstein nor provided him with a copy of his loan agreement.

21. Mr. Goldenstein believes and therefore avers that the loan was issued at an Annual Percentage Rate of about 300%, and required interest to be paid in full each month for the loan to remain in good standing.

22. Attached as Exhibit P-5 is a standard form loan contract Sovereign entered into with another borrower. Mr. McKibbin signed the contract for Sovereign. It is likely that Mr. Goldenstein's loan was on similar terms.

23. The loan was allegedly secured by Mr. Goldenstein's car, and Mr. Goldenstein signed a power of attorney authorizing Sovereign to record a lien in his car.

24. Sovereign conditioned the loan on obtaining authority to make ACH withdraws from Mr. Goldenstein's bank account even though the practice is illegal under federal law. 15 U.S.C. § 1693k (extension of credit may not be conditioned on authority to make ACH withdraws from bank account).

25. It was illegal for Sovereign to make a loan with a triple digit interest rate on-line to Mr. Goldenstein in Pennsylvania. In *Cash America Net v. Commonwealth of Pennsylvania*, 607 Pa. 432, 8 A.3d 282, 295 (2010), the Pennsylvania Supreme Court ruled that on-line lenders were doing business in Pennsylvania when they made loans to citizens of the Commonwealth and had to comply with Pennsylvania lending laws and regulations.

In Pennsylvania the maximum lawful interest rate a licensed lender may charge is about 24%, and an unlicensed lender may not charge more than 6%. *Id. See also Kaneff v. Delaware Title Loans,* 587 F.3d 616, 624 (3d Cir. 2009) (holding that Pennsylvania law applies to a 300% A.P.R. auto title loan between a Delaware lender and a Pennsylvania borrower).

26. Despite the illegality of making loans at 300% A.P.R. in Pennsylvania, Sovereign makes the loans anyway because it claims to be an instrumentality of an indian tribe, clothed in the tribe's sovereign immunity. Exhibits P-3 & P-5.

27. By the fall of 2012, Sovereign declared the loan in default due to nonpayment of usurious interest and ordered Mr. Goldenstein's car to be repossessed.

28. Mr. McKibbin is believed to have directed, authorized, or ratified the decision to repossess Mr. Goldentein's motor vehicle.

29. Repossessors, acting under the authority of Chad Latvaaho, became the prime contractor to perform the repossession.

30. Repossessors subcontracted the job to its Pennsylvania affiliate Premier.

31. Premier repossessed Mr. Goldenstein's car on or about October 6, 2012.

32. The repossession occurred at Mr. Goldensteins place of employment, the Wyndham Garden Exton hotel in Exton, Pennsylvania.

33. One of Mr. Goldenstein's coworker observed the repossession in progress and alerted Mr. Goldenstein who confronted the repossessor. The repossessor was accompanied by a police officer. Needless to say, Mr. Goldenstein was not able to stop the

5

repossession, and all of his coworkers learned of it, causing Mr. Goldenstein to experience considerable embarrassment.

34. In taking on the work, the defendants failed to exercise due diligence to determine the validity or legality of the loan or its right to repossess the collateral.

35. Sovereign demanded a payment of over $2,300 for the return of the car. This sum consisted of about $1,000 in usurious interest plus several hundred dollars of repossession fees and expenses.

36. Mr. Goldenstein was able to amass the funds and was instructed to retrieve his vehicle at a lot in Pottstown, Pennsylvania.

37. Premier accepted the money to redeem the vehicle, and in addition to the money, demanded that Mr. Goldenstein execute a release as a condition for the return of his car. A copy of the release is attached hereto as Exhibit P-6.

38. Mr. Goldenstein did not receive any consideration in return for the release. He still had to pay the full cost for the redemption of the vehicle.

39. As a result of these events, Mr. Goldenstein suffered harm consisting of the temporary loss of his motor vehicle, the expenditure of money on usurious interest and unlawful collection costs, and the accompanying emotional distress of having his vehicle repossessed, including but not limited to shame, humiliation, frustration, and anger.

### Count I

40. This count is against Repossessors and Premier for violation of the FDCPA and the Pennsylvania Fair Credit Extension Uniformity Act, 73 P.S. § 2270.4. All of the preceding paragraphs are incorporated by reference.

41. Under 15 U.S.C. § 1692f(6)(A), the FDCPA prohibits debt collectors from enforcing a security interest against a debtor's property in the absence of a present right to possession of the collateral.

42. Repossessors and Premier lacked a present right to repossess Mr. Goldenstein's car because:

(a). It was illegal under Pennsylvania law, applicable to this transaction pursuant to *Cash America Net v. Commonwealth of Pennsylvania*, 607 Pa. 432, 8 A.3d 282, 295 (2010), to repossess Mr. Goldenstein's car to enforce the collection of interest at 300% A.P.R.:

(b). Under Pennsylvania law, 41 P.S. §§ 201, 501 & 502, Sovereign was not allowed to charge more than 6% A.P.R. which would have come to a $5.00 monthly interest payment on a $1,000 loan.

(c). Mr. Goldenstein would have been able to afford a $5.00 payment if he had been told that was all he had to pay. In the unlikely even Mr. Goldenstein would be late making a $5.00 payment, the breach would not be material.

(d). The sole reason Mr. Goldenstein's car was repossessed was to enforce the payment of usurious interest assessed at a rate 50 times the legal limit.

(e). Sovereign would not have been entitled to a judgment to replevy Mr. Goldenstein's car to enforce the collection of illegal interest under Pennsylvania law. *See Simpson v. Penn Discount Corp.*, 335 Pa. 172, 5 A.2d 796, 798 (1939); *Gilbert v. Otterson*, 550 A.2d 550, 379 Pa. Super. 481 (1988).

43. Repossessors and Premier failed to have any procedure in place to evaluate the legitimacy of Sovereign's claim to repossess the vehicle.

44. Premier made false, deceptive, or misleading representations to Mr. Goldenstein in violation of 73 P.S. § 2270.4.  Specifically, Premier:

(a). Represented to Mr. Goldenstein that he was liable for several hundred dollars of towing and storage charges for which he was not actually liable;

(b). Misrepresented to Mr. Goldenstein that he had to sign a release when in fact he had no obligation to sign one; provided Mr. Goldenstein paid legitimate collection costs, Premier had a legal duty to return his car, and could not further condition the return of the vehicle on execution of a release, 13 Pa.C.S. §§ 9602 & 9625 (right to redeem collateral upon payment of collection costs cannot be waived or modified); and

(c). Misrepresented to Mr. Goldenstein in the release that he was waiving his right to sue for various violations of the law even though the release would not be enforceable.

45. Repossessors and Premier used unfair or unconscionable means of debt collection against Mr. Goldenstein in violation of 73 P.S. § 2270.4.  Specifically, the defendants:

(a). Collected towing and storage charges from Mr. Goldenstein that were not permitted by law or authorized by the loan agreement;

(b). Conditioning the return of Mr. Goldenstein's vehicle on execution of a release he had no obligation to sign.  13 Pa.C.S. §§ 9602 & 9625.  The release is an exculpatory agreement that violates the public policy underlying the FDCPA, the Fair

Credit Extension Uniformity Act, and the RICO statute. The release, if anything, signifies the defendants' guilty knowledge; they have their victims sign a release because they know they are engaging in actionable conduct.

WHEREFORE, plaintiff requests the court to grant the following relief:

(a). An award of actual and statutory damages, including damages for deprivation of his vehicle, emotional distress, attorney's fees and costs; and

(d). Any other relief that is just and appropriate.

## Count II

46. This count is against Chad Latvaaho and Philip J. Hourican for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c). Mr. Latvaaho and Mr. Hourican operated an enterprise consisting of their two affiliated companies to collect unlawful debt. All of the preceding paragraphs are incorporated by reference.

47. Chad Latvaaho is a person within the meaning of section 1962(c) as that term is defined in section 1961(3).

48. Philip J. Hourican is a person within the meaning of section 1962(c) as that term is defined in section 1961(3).

49. Repossessors is an enterprise within the meaning of section 1962(c), as the term is defined in section 1961(4).

50. Premier is an enterprise within the meaning of section 1962(c), as the term is defined in section 1961(4).

51. Repossessors and Premier are affiliated with each other through an arrangement in which one or both companies have agreed to perform repossessions for the other within their respective territories. Exhibit P-1.

52. Through their affiliation, Repossessors and Premier have formed an enterprise within the meaning of section 1961(4).

53. Chad Latvaaho is employed by or associated with Repossessors; specifically Chad Latvaaho has an ownership interest in Repossessors and is its chief executive.

54. Philip J. Hourican is employed by or associated with Premier; specifically Mr. Hourican is believed to have an ownership interest in Premier and be its chief executive.

55. By virtue of their status with their respective companies, Mr. Latvaaho and Mr. Hourican conduct or participate in the enterprise created by their companies' affiliation.

56. Repossessors is engaged in interstate commerce and uses instrumentalities of interstate commerce in its daily business activities. Specifically, Repossessors is a citizen of Minnesota and works for Sovereign, which is believed to be a citizen of Michigan. In this case, Repossessors was the prime contractor for a repossession that took place in Pennsylvania.

57. Premier is engaged in interstate commerce and uses instrumentalities of interstate commerce in its daily business activities. Specifically, Premier is a citizen of Pennsylvania but repossesses cars for out of state creditors. In this case, Premier

repossessed Mr. Goldenstein's car as a subcontractor for Repossessors to collect a debt for Sovereign.

58. The enterprise created by the affiliation between Repossessors and Premier is engaged in interstate commerce and uses instrumentalities of interstate commerce in its activities. In this case, the enterprise repossessed a car in Pennsylvania for a creditor that purports to be a citizen of Michigan, but operates out of an office in Florida.

59. Chad Latvaaho conducts the affairs of the enterprise or participates in the affairs of the enterprise, directly or indirectly, through the collection of unlawful debt in violation of 18 U.S.C. § 1962(c).

60. Specifically, Chad Latvaaho directed, approved, or ratified collection of unlawful debt from Mr. Goldenstein by arranging for the repossession of his vehicle.

61. Philip J. Hourican conducts the affairs of the enterprise or participates in the affairs of enterprise, directly or indirectly, through the collection of unlawful debt in violation of 18 U.S.C. § 1962(c).

62. Specifically, Mr. Hourican directed, approved, or ratified collection of unlawful debt from Mr. Goldenstein by having Premier repossess his car.

63. The affiliation between Repossessors and Premier would also constitute a conspiracy between the two companies and their principals to use an enterprise for the collection of unlawful debt in violation of 18 U.S.C. § 1962(d).

64. Sovereign's loan to Mr. Goldenstein constitutes unlawful debt within the meaning of section 1962(c) as the term is defined in section 1961(6). Specifically, (a) a substantial portion of the loan is unenforceable under state usury law; (b) the loan was

incurred in connection with the business of lending money at a usurious interest rates, and (c) the loan was issued at a rate far in excess of twice the enforceable rate. 18 U.S.C. § 1961(6).

65. Mr. Goldenstein suffered damages as a result of Latvaaho and Mr. Hourican's conduct.  Specifically,  Mr. Goldenstein lost possession of his automobile, was forced to pay usurious interest to Sovereign as well as excessive and unjustified fees and costs to the enterprise, and endured emotional distress.

WHEREFORE, Mr. Goldenstein requests relief as follows:

(a). An award of damages against Mr Latvaaho and Mr. Hourican equivalent to three times Mr. Goldenstein's actual damages including his economic and noneconomic damages;

(b). An award of attorney's fees and costs;

(c). Any other relief that is just and appropriate.

## Count III

66. This count is against William McKibbin, Chad Latvaaho, and Philip J. Hourican for engaging in a conspiracy to collect unlawful debt in violation of 18 U.S.C. § 1962(d).  All of the preceding paragraphs are incorporated by reference.

67. McKibbin, Latvaaho, and Hourican were parties to an agreement to repossess Mr. Goldenstein's car to collect unlawful debt.

68. The agreement contemplated that Mr. Latvaaho and Mr. Hourican would use or operate an enterprise to repossess Mr. Goldenstein's car to enforce collection of a usurious loan owed to companies controlled or directed by Mr. McKibbin.

WHEREFORE, Mr. Goldenstein requests relief as follows:

(a).    An award of damages against Misters McKibbin, Latvaaho and Hourican equivalent to three times Mr. Goldenstein's actual damages including his economic and noneconomic damages;

(b).    An award of attorney's fees and costs, and

(c).    Any other relief that is just and appropriate.

Respectfully submitted,

_____
Robert F. Salvin (RFS2522)
Two Bala Plaza, Suite 300
Bala Cynwyd, PA  19004
215-300-2388
215-271-2820 (fax)
rfsalvin@hotmail.com