IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HEIKO GOLDENSTEIN,           )
                             )
            Plaintiff        )
                             )      Civil Action
        vs.                  )      No. 13-cv-02797
                             )
REPOSSESSORS, INC.;          )
CHAD LATVAAHO;               )
SHADY OAK ENTERPRISES, INC., )
  doing business as PREMIER  )
  FINANCE ADJUSTERS; and     )
PHILIP J. HOURICAN,          )
                             )
            Defendants       )

*   *   *

APPEARANCES:

        NEAL A. THAKKAR, ESQUIRE
             On behalf of Plaintiff

        ROBERT F. SALVIN, ESQUIRE
             On behalf of Defendants

*   *   *

**O P I N I O N**

JAMES KNOLL GARDNER
United States District Judge

        This matter is before the court on the Motion for

Summary Judgment on Behalf of Defendants, Repossessors, Inc.,

Chad Latvaaho, and Shady Oak Enterprises, Inc., d/b/a Premier

Finance Adjusters, which motion was filed on April 11, 2014

together with a brief in support of motion for summary judgment.

Plaintiff's Response in Opposition to Motion for Summary

Judgment was filed on May 5, 2014 together with plaintiff's

memorandum of law.  Defendants filed their Reply Brief in Support of Motion for Summary Judgment on Behalf of Defendants, Repossessors, Inc., Chad Latvaaho, and Shady Oak Enterprises, Inc., d/b/a Premier Finance Adjusters, on June 19, 2014. Plaintiff's Motion to Bring Additional Authority to the Court's Attention was filed on July 16, 2014.[1]

### SUMMARY OF DECISION

This case involves the repossession of a debtor's vehicle as collateral for a loan.  Plaintiff Heiko Goldenstein alleges that defendants, Repossessors, Inc., Chad Latvaaho, Shady Oak Enterprises, Inc., doing business as Premier Finance Adjusters, and Philip J. Hourican, repossessed his vehicle in violation of the Fair Debt Collection Practices Act[2] ("FDCPA") and the Pennsylvania Fair Credit Extension Uniformity Act[3] ("PFCEUA") (Count One), and the Civil Racketeer Influenced and Corrupt Organizations Act[4] ("RICO") (Count Two).

---

[1]     The additional authority submitted by plaintiff, <u>Otoe-Missouria Tribe of Indians v. New York State Department of Financial Services</u>, 974 F.Supp.2d 353, 361 (S.D.N.Y. 2013), holds that Tribal lending services projected over the internet into foreign jurisdictions are subject to the anti-usury laws of those jurisdictions.  As I have applied Pennsylvania Law to the present case, consideration of plaintiff's submission of additional authority does not alter the reasoning or outcome of this Opinion.

[2]     15 U.S.C. § 1692f.

[3]     73 P.S. § 2270.4.

[4]     18 U.S.C. § 1962(c).

For the following reasons, I grant defendants' motion for summary judgment on both counts.

Defendants' motion is granted with regard to Count One because this Count presents no genuine dispute of material fact and because I conclude that plaintiff has failed to establish a prima facie case to support his claims under FDCPA and PFCEUA.

Defendants' motion is granted with regard to Count Two of his complaint because this Count presents no genuine dispute of material fact and because I conclude that plaintiff has failed to establish a prima facie case to support his claim under RICO.

## JURISDICTION

Jurisdiction is based upon federal question jurisdiction pursuant to 28 U.S.C. § 1331.  Plaintiff brings claims under 15 U.S.C. § 1692f and 18 U.S.C. § 1962(c).  This court also properly has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over plaintiff's state law claim under 73 P.S. § 2270.4, which is part of the same case and controversy.

## VENUE

Venue is proper pursuant to 28 U.S.C. § 1391(b) because the events giving rise to these claims occurred in Exton, Chester County, Pennsylvania and in Pottstown, Montgomery County, Pennsylvania, both of which are located in this judicial district.  See 28 U.S.C. §§ 118, 1391(b).

## PROCEDURAL HISTORY

Plaintiff initiated this action by filing a two-count Complaint on May 21, 2013.  Count One alleges violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692f(6)(A) and Pennsylvania Fair Credit Extension Uniformity Act, 73 P.S. § 2270.4.  Count Two alleges violations of the Civil Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c).

As noted above, on April 11, 2014, defendants filed their within motion for summary judgment and on May 5, 2014, plaintiff filed his response in opposition.  On June 19, 2014, defendants filed a reply brief in support of its motion for summary judgment.  Defendants' motion for summary judgment is now before the court for disposition.

## STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure permits a party to seek summary judgment with respect to a claim or defense, or part of a claim or defense.  Rule 56(a) provides, in pertinent part, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a); National Association for the Advancement of Colored People "NAACP" v. North Hudson Regional Fire & Rescue, 665 F.3d 464, 475 (3d Cir. 2012).

For a fact to be considered material, it "must have
the potential to alter the outcome of the case." Id. (citing
Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006)).
Disputes concerning facts which are irrelevant or unnecessary do
not preclude the district court from granting summary judgment.
Id.

Where a party asserts that a particular fact is, or
cannot be, genuinely disputed, the party must provide support
for its assertion.  Fed.R.Civ.P. 56(c)(1) provides that party
may support its factual assertions by

> (A)  citing particular parts of materials in the
>      record, including depositions, documents,
>      electronically stored information,
>      affidavits or declarations, stipulations
>      (including those made for purposes of the
>      motion only), admissions, interrogatory
>      answers, or other materials; or
>
> (B)  showing that the materials cited do not
>      establish the absence or presence of a
>      genuine dispute, or that an adverse party
>      cannot produce admissible evidence to
>      support the fact.

When considering a motion for summary judgment, the
district court must view the facts and record evidence presented
"in the light most favorable to the non[-]moving party." North
Hudson, 665 F.3d at 475 (quoting Scott v. Harris, 550 U.S. 372,
380, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686, 694 (2007)).  Stated
differently, "[i]n considering a motion for summary judgment, a
district court may not make credibility determinations or engage

in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202, 261 (1986)).

If the moving party shows that there is no genuine issue of fact for trial, "the non-moving party then bears the burden of identifying evidence that creates a genuine dispute regarding material facts." Id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 274 (1986)).

Where a defendant seeks summary judgment, the plaintiff cannot avert summary judgment with speculation, or by resting on the allegations in his pleadings, but rather he must present competent evidence from which a jury could reasonably find in his favor. Ridgewood Board of Education v. N.E. for M.E., 172 F.3d 238, 252 (3d Cir. 1999); Woods v. Bentsen, 889 F.Supp. 179, 184 (E.D.Pa. 1995)(Reed, J.).

"Ultimately, [w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Id. (quoting Matsushita Electric Industries Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 552

(1986)) (internal quotations omitted and alteration in original).

## FACTS

Upon consideration of the pleadings, record papers, exhibits,[5] affidavits, and depositions, and the parties' respective statements of undisputed material facts,[6] and drawing all reasonable inferences in favor of the plaintiff, as required by the foregoing standard of review, the pertinent facts of this case are as follows.

During all events relevant to this case, plaintiff Heiko Goldenstein was a citizen and resident of Pennsylvania, and an employee at the Wyndham Garden Hotel (previously known as The Inn at Chester Springs) in Exton, Pennsylvania.[7]

---

[5]    Plaintiff's exhibits to his response in opposition to summary judgment were filed as Exhibit P-7 Part I, Exhibit P-7 Part II, Exhibit P-7 Part III, Exhibit P-8, Exhibit P-9, and Exhibit P-10.  Plaintiff's exhibits are referred to by their titles and page numbers throughout this opinion. Plaintiff's exhibits appear as Documents 40-2 through 40-7 on the record.

　　　　Defendants' exhibits were filed as Exhibits A-H and are hereafter referred to by their titles, for example, "Defendants' Exhibit A."  Citations to pages of Defendants' Exhibit C (deposition of Heiko Goldenstein) refer to the page numbers of the deposition itself rather than those of the submitted attachment, which is formatted to show four transcript pages per sheet. Defendants' exhibits appear on the record as Documents 35-1 through 35-8.

[6]    Defendants aver the undisputed material facts of this case in their motion for summary judgment ("Defendants' Motion").  Plaintiff acknowledges these factual averments in his response in opposition to defendants' motion for summary judgment ("Plaintiff's Response").

[7]    Defendants' Exhibit C, page 10.

In April, 2012, plaintiff sought to obtain a loan to help him pay an electric bill.[8]  Plaintiff experienced difficulty finding a bank or other lender willing to extend credit to him, but was eventually able to obtain a title loan online from a company called Sovereign Lending Solutions, LLC ("Sovereign"), doing business as Title Loan America.[9]  Sovereign is a tribal lending entity of the Lac Vieux Desert Band of Lake Superior Chippewa Indians, a federally-recognized Indian tribe based in Watersmeet, Michigan.[10]

Sovereign approved plaintiff's application for a loan for $1,000, secured by plaintiff's vehicle – a 1998 Lincoln Town car.[11]  The interest rate on the loan was about 250% APR.[12]

Neither plaintiff nor defendants have a copy of plaintiff's loan agreement with Sovereign, but plaintiff and defendants have each provided the court with a sample Pawn Ticket Agreement from Sovereign containing its standard terms and conditions, including an arbitration clause, a statement of Sovereign's rights in the event of default, and statement of

---

[8]     Defendants' Exhibit C, page 24.

[9]     Id. at 26-27; Defendants' Motion ¶ 3; Plaintiff's Response ¶ 3.

[10]    Plaintiff's Exhibit P-7 Part I, pages 1-3.

[11]    Defendants' Exhibit C, page 17; Defendants' Motion ¶ 6; Plaintiff's Response ¶ 3.

[12]    Plaintiff's Response ¶ 10.

sovereign immunity.[13]  Sovereign's general terms and conditions
can also be found on the Title Loan America website.[14]

On April 19, 2012, Sovereign electronically wired $950
into plaintiff's bank account, retaining $50 as a fee for the
wire transfer.[15]  After this deposit was made, no further
correspondence took place between plaintiff and Sovereign.[16]  On
June 1, 2012, and July 2, 2012, Sovereign debited plaintiff's
bank account $207.90 for repayment of the loan.[17]  Because
plaintiff did not recognize this account activity (described as
"Sovereign Payroll") on his bank statement, he removed all funds
from the account to attempt to stop the withdrawals, but did not
close the account.[18]

On August 1, 2012, Sovereign attempted to again debit
plaintiff's account, but payment was rejected because of
insufficient funds.[19]  At no time did plaintiff contact Sovereign
to attempt to void the loan, repay the principal, or renegotiate

---

[13]     Defendants' Exhibit B, page 1; Defendants' Exhibit F, pages 1-10;
Plaintiff's Exhibit P-7 Part I, pages 130-137.

[14]     Defendants' Exhibit E, pages 1-7.

[15]     Defendants' Motion ¶ 6; Defendants' Exhibit D, page 1.

[16]     Defendants' Motion ¶ 7-8; Plaintiff's Response ¶ 7-8.

[17]     Defendants' Exhibit D, page 3, 6.

[18]     Defendants' Motion ¶ 12; Plaintiff's Response ¶ 12.

[19]     Defendants' Exhibit D, page 7.

repayment terms.[20]  On August 20, 2012, RS Financial Services, LLC, which services loans on behalf of Sovereign, contracted with defendant, Repossessors, Inc. for the recovery of plaintiff's vehicle as collateral for the loan.[21]

Repossessors, Inc. is a Minnesota corporation owned by defendant, Chad Latvaaho, which performs recovery operations in Minnesota, North Dakota, South Dakota, Iowa, Wisconsin, Nebraska, Arizona, and New Mexico for lenders throughout the United States.[22]  A lender seeking to retain Repossessors, Inc. must agree to its terms and conditions, including the provision that "[t]he firm/bank issuing this authorization to recover collateral represents and affirms that it has the present right to repossess the collateral as defined in FDCPA."[23]

Repossessors, Inc. is not licensed to conduct recovery operations in Pennsylvania.[24]  Thus, on August 22, 2012, Repossessors, Inc. subcontracted to defendant Shady Oak Enterprises, Inc., doing business as Premier Finance Adjusters

---

[20]    Defendants' Motion ¶ 14-15; Plaintiff's Response ¶ 14-15.

[21]    Defendants' Motion ¶ 28-30; Plaintiff's Response ¶ 28-30.

[22]    Defendants' Motion ¶ 24-25; Plaintiff's Response ¶ 24-25.

[23]    Defendants' Exhibit G, ¶ 5.

[24]    Id. at ¶ 10.

("Premier"), a corporation owned by defendant, Philip J. Hourican, for the recovery of plaintiff's vehicle.[25]

Premier recovered plaintiff's vehicle at plaintiff's place of employment on Saturday, October 6, 2012.[26] A police officer, plaintiff, and several of plaintiff's coworkers witnessed the repossession, causing plaintiff to experience embarrassment for the remainder of his employment.[27] At the time of repossession, Premier's tow truck driver gave plaintiff a phone number he could call to learn how to redeem his vehicle the following Monday.[28]

When plaintiff called the phone number, he was told that he could recover his vehicle in Pottstown and would need to bring over $2,000 to do so.[29] Plaintiff arrived in Pottstown and was charged $2,393 for the recovery of his vehicle ($2,143 for the loan repayment, and $250 in fees for repossession fees).[30] Premier told plaintiff that his payment would not be accepted nor his vehicle returned until he signed release documents.[31]

---

[25]    Defendants' Exhibit G, ¶ 10; Plaintiff's Exhibit P-9, page 11; Defendants' Motion ¶¶ 2, 31.

[26]    Defendants' Motion ¶ 32; Plaintiff's Response ¶ 32.

[27]    Id.

[28]    Defendants' Exhibit C, pages 60-61.

[29]    Defendants' Motion ¶ 34.

[30]    Id.; Defendants' Exhibit H, page 6; Plaintiff's Exhibit P-8, page 24.

[31]    Defendants' Motion ¶ 35-36.

After speaking with his lawyer, plaintiff signed the documents, paid the $2,393 to Premier and recovered his vehicle.[32]

### CONTENTIONS OF THE PARTIES

### Contentions of Defendants

Defendants contend that they are entitled to summary judgment on each of plaintiff's claims.

Defendants argue that they are entitled to judgment as a matter of law because plaintiff's claims pursuant to FDCPA, PFCEUA, and RICO present no genuine disputes of material fact.

Defendants contend that judgment should be entered in their favor on Count One because they have not violated the FDCPA or PFCEUA because they had a present right to possess plaintiff's property claimed as collateral through a secure interest.  Specifically, defendants contend that a security interest in plaintiff's car was created when plaintiff entered into the loan agreement with Sovereign, and that therefore defendants had a present right to possess the vehicle when plaintiff defaulted on the loan.

Defendants argue that even if the court accepts plaintiff's calculations revealing a usurious interest rate that violates Pennsylvania law, this does not invalidate the loan

---

[32]    Defendants' Exhibit H, pages 1-6; Plaintiff's Exhibit P-8, pages 23-28.

itself.[33]   Defendants emphasize that, at the time plaintiff removed all funds from his bank account to stop the withdrawals, he had not even repaid half of the principal on the loan.   Thus, defendants argue that plaintiff defaulted on the loan and gave defendants a present right to recover plaintiff's vehicle for Sovereign by missing three consecutive payments (August, September, and October) on the loan and giving no notice of an intention to repay the loan at a lesser interest rate.

Regarding plaintiff's claim for RICO violations, defendants contend that this claim does not present a genuine dispute of material fact because plaintiff mischaracterizes defendants' recovery of collateral used to secure debt as the collection of unlawful debt.

Finally, defendants argue that plaintiff's suit is barred by the release documents he signed when he recovered his vehicle in Pottstown.

### Contentions of Plaintiff

Plaintiff contends that defendants are not entitled to summary judgment because each of his claims presents disputes of material fact.

---

[33]   Defendants contend that without a copy of the loan agreement, plaintiff has no proof the loan had a usurious interest rate.  Defendants further contend that any question as to the validity or legality of the loan can only be settled by the alternative dispute resolution mechanisms outlined in Sovereign's standard terms and conditions.

Regarding his claims pursuant to FDCPA and PFCEUA, plaintiff contends that the repossession was unlawful because defendants had no present right to possess his vehicle as collateral for the loan.  Plaintiff argues that the loan did not create a valid security interest in his vehicle because of its unlawful usurious interest rate.  Without a valid security interest, plaintiff argues, defendants had no authority to recover plaintiff's car.

Plaintiff also argues that the loan's usurious interest rate made its repayment unenforceable under Pennsylvania's anti-usury laws, which apply to online lenders and cannot be waived by consumers.[34]  Plaintiff cites Pennsylvania law permitting debtors to deduct excess interest and pay back the loan at the legal interest rate upon notification to the creditor, and to bring an action against the creditor to recover usurious interest already paid.[35]

Plaintiff asserts that the legal rate of interest is 6%, or about $5.00 per month, in comparison to Sovereign's interest rate of 250%, or about $270.00 per month.  Plaintiff contends that because the loan was usurious, defendants illegally repossessed his car to coerce the repayment of the

---

[34]    See 13 Pa.C.S.A. § 9602; Cash America Net of Nevada, LLC v. Commonwealth of Pennsylvania, Department of Banking, 607 Pa. 432, 453 (2010).

[35]    See 41 P.S. §§ 501-502, 504.

-14-

loan balance, including usurious interest owed, which plaintiff had no legal obligation to pay.

Finally, plaintiff contends that the release he signed is unenforceable as unconscionable under Pennsylvania law and the Uniform Commercial Code, and therefore creates no bar to this suit.  Plaintiff also contends that the arbitration agreement contained in Sovereign's terms and conditions does not protect defendants from suit.

Regarding his RICO claim, plaintiff contends that defendants conducted and participated in the conduct of an enterprise affecting interstate commerce which was engaged in the collection of unlawful debt by repossessing his car as collateral for a usurious loan.

## DISCUSSION

### Count One:
### Fair Debt Collection Practices Act and
### Pennsylvania Fair Credit Extension Uniformity Act

The Fair Debt Collection Practices Act and Pennsylvania Fair Credit Extension Uniformity Act prevent unlawful and unconscionable means of debt collection.[36] 15 U.S.C. § 1692; 73 P.S. § 2270.4.  Under the FDCPA, repossession agencies such as defendants constitute "debt

---

[36]     Section 2270.4 of the Pennsylvania Fair Credit Extension Uniformity Act states, "[i]t shall constitute an unfair or deceptive debt collection act or practice under this act if a debt collector violates any of the provisions of the Fair Debt Collection Practices Act [15 U.S.C. § 1692]." 73 P.S. § 2270.4.  Thus, plaintiff's FDCPA and PFCEUA claims share identical elements and will be analyzed as one claim for purposes of this Opinion.

collectors" for purposes of § 1692f(6) only.  Jordon v. Kent, 731 F.Supp. 652, 657 (D.Del. 1990).  Section 1692f(6)(A) states that it shall be unlawful for a debt collector to take or threaten to take "any nonjudicial action to effect dispossession or disablement of property if there is no present right to possession of the property claimed as collateral through an enforceable security interest."  § 1692f(6)(A).

No dispute exists as to defendants' status as debt collectors legally bound by the provisions of § 1692f(6)(A). Additionally, no dispute exists as to whether defendants employed nonjudicial action to take possession of plaintiff's property.  The legal dispute in this case focuses on whether defendants had a "present right to possession" of plaintiff's vehicle "claimed as collateral through a secure interest." § 1692f(6)(A).  I agree with defendants that this element raises no genuine dispute of material fact, and that defendants did have a present right to possession of plaintiff's vehicle.

In Pennsylvania, a usurious interest rate alone does not invalidate or void a loan in its entirety.  Mulcahy v. Loftus, 439 Pa. 111, 113 (1970).  This Court has repeatedly followed the Mulcahy rule.  See Collins v. Siani's Salvage, LLC, 2014 WL 1244057 at *3-4 (E.D.Pa. Mar. 24, 2014)(Schmehl, J.); Gonzalez v. DRS Towing, LLC, Civ.A.No. 12-cv-05508 at 5 (E.D.Pa. Feb. 28, 2013) (Davis, J.).  With the exception of allegations

-16-

regarding usury, plaintiff makes no claim of any way in which his loan agreement with Sovereign was invalid, and nonetheless could not prove such invalidity because of his failure to present documentation of the loan agreement.  Thus, providing evidence of a usurious interest rate is insufficient for plaintiff to show that the Sovereign had no security interest in his vehicle.

        Additionally, any complaints by plaintiff regarding the legality of the loan are subject to Sovereign's arbitration clause.  See Kaneff v. Delaware Title Loans, Inc., 587 F.3d 616, 624-625 (3d Cir. 2009) which holds that, when a loan agreement contains an arbitration clause, challenges to the legality of the loan agreement are subject to arbitration unless the challenge is to the arbitration clause itself.  For these reasons, I must consider the loan agreement to be valid, notwithstanding its usurious interest rate.  As such, the loan created a valid security interest in plaintiff's vehicle which had been posted as collateral for the loan.

        Therefore, defendants had a present right to possess plaintiff's vehicle when they contracted with Sovereign because plaintiff had defaulted on his loan repayments.  See 13 Pa.C.S.A. § 9609.  In the very similar Gonzalez case, a debtor brought suit against a repossession company for repossessing her vehicle after she failed to make payments on a

loan with a usurious interest rate.  Gonzalez, Civ.A.No.
12-cv-05508 at 1-2.

In Gonzalez, the court held that despite the loan's
usurious interest rate, the repossession company had a present
right to repossess the debtor's vehicle because she had failed
to make timely repayments altogether.  Id. at 6.  Though a
usurious loan may entitle a debtor to pursue a claim against a
creditor for statutory damages, it does not relieve the debtor
of his or her responsibility to repay the loan.  Id.; See also,
Collins, 2014 WL 1244057 at *4.

Here, plaintiff repaid only $440.00, or less than half
the principal of the loan.  Even if plaintiff were correct in
his assertion that, pursuant to 41 P.S. § 501, he was not
required to repay the loan at more than 6% interest, plaintiff
admits that for three months he made no payment at all to
Sovereign.

As in Gonzalez, plaintiff's lack of timely payment
altogether resulted in default regardless of interest rate.
Gonzalez, Civ.A.No. 12-cv-05508 at 6, n.5.  Moreover, plaintiff
never gave notice to the creditor of any intent to continue
repaying the loan at the legal interest rate, as required by
41 P.S. § 501.  Id.; See also, Collins, 2014 WL 1244057 at *4.

Plaintiff's attempt to distinguish this case from
Gonzalez and Collins on the grounds that he, unlike the

-18-

plaintiffs in those cases, redeemed his collateral, is
meritless.  A repossession agency is not engaged in the
"indirect collection of debt" by allowing a debtor to fulfill
loan obligations to redeem repossessed collateral.  See Jordan,
731 F.Supp. at 659.

Plaintiff was never obligated to redeem his vehicle.
Under 13 Pa.C.S.A. § 9623, a debtor is permitted to redeem his
property possessed as collateral upon fulfillment of obligations
secured by the collateral, but is not required to do so.
13 Pa.C.S.A. § 9623.  Thus, plaintiff's voluntary choice to pay
to redeem his collateral does not impose liability on defendants
under FDCPA or PFCEUA.

The fact that the amount plaintiff paid to redeem his
vehicle accounted for the loan's usurious interest rate is
immaterial.  Repossession agencies may rely on creditors'
representations of debt and are not required to conduct
independent investigations into validity of the loan or the
balance due.  Smith v. Transworld Systems, Inc., 953 F.2d 1025,
1032 (6th Cir. 1992); Ahmed v. I.C. Systems, Inc.,
2005 WL 3533111 (W.D.Pa. Dec. 20, 2005) at 5 (citing Ducrest v.
Alco Collections, Inc., 931 F.Supp. 459, 462 (M.D.La. 1996)).
This policy does not infringe upon a debtor's rights under

Pennsylvania's anti-usury laws to subsequently take legal action to pursue the recovery of usurious interest from a creditor.[37]

For the foregoing reasons, I conclude that no genuine disputes of material fact exist regarding plaintiff's FDCPA and PFCEUA claims.  Accordingly, I grant defendants' motion for summary judgment on those claims.  Judgment is entered in favor of defendants and against plaintiff on Count One.

## Count Two:
## Racketeer Influenced and Corrupt Organizations (RICO)

Pursuant to the Civil Racketeer Influenced and Corrupt Organizations Act ("RICO"), it is unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate . . . in the conduct of such enterprise's affairs through . . . collection of unlawful debt."  18 U.S.C. § 1962(c).

Plaintiff's RICO claim fails as a matter of law because there is no genuine dispute of material fact regarding whether defendants collected unlawful debt from plaintiff when they repossessed plaintiff's vehicle.  It is well-settled by this court that the repossession of collateral is clearly

---

[37]     As plaintiff asserts in his brief, Pennsylvania law permits debtors to bring suit to recover all damages resulting from payment of usurious loans, including the recovery of triple the amount of such excess interest.  See Plaintiff's Response, page 10-11 (citing 41 P.S. § 502, 504). Plaintiff's capacity to exercise those rights against Sovereign Lending Solutions, LLC are not encumbered by this Opinion.

distinguishable from the collection of unlawful debt and does not give rise to a RICO claim.  See Collins, 2014 WL 1244057 at *5; Gonzalez, Civ.A.No. 12-cv-05508 at 7.

For the foregoing reasons, I conclude that no genuine disputes of material fact exist regarding plaintiff's RICO claim.  Accordingly, I grant defendants' motion for summary judgment for that claim.  Judgment is entered in favor of defendants and against plaintiff on Count Two.

<u>**CONCLUSION**</u>

For all the foregoing reasons, I grant defendants' motion for summary judgment on all claims.  Judgment in entered in favor of defendants and against plaintiff on Counts One and Two.